STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
PITT COUNTY | CIVIL ACTION NUMBER: 21 CVS 1790

FILED
2021 JUN 18 A 8:25
PITT CO., C.S.C.
BY ______

DR. DOROTHEA MACK, )
Plaintiff, )
)
vs. ) **COMPLAINT**
) *(Jury Trial Requested)*
EAST CAROLINA UNIVERSITY, )
a constituent institution of the )
University of North Carolina; )
John Mountz, in his individual and )
official capacity; Dr. Grant Hayes, )
in his individual and official )
capacity; Dr. Philip Rogers, in his )
individual and official capacity, )
Defendants. )

---

Plaintiff, Dr. Dorothea Mack, by and through her undersigned counsel, complains of Defendants East Carolina University, John Mountz, in his individual and official capacity, Dr. Grant Hayes, in his individual and official capacity, and Dr. Philip Rogers, in his individual and official capacity, as follows:

## I. NATURE OF THE ACTION

1. This is a civil action seeking back pay, equitable relief, and damages pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the amendments thereto, pursuant to 42 U.S.C. § 1981a, and N.C.G.S. §§ 143-422.2 and 143-422, arising from Defendants' unlawful discrimination against Plaintiff on account of her race and age, and seeks back pay and equitable relief. Plaintiff also seeks damages for deprivation of rights under the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 against Defendants Mountz, Hayes and Rogers, in their individual capacities.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 42 U.S.C. § 2000e in that such claims arise under the laws of the United States.

3. Venue in the subject civil action is properly lodged in the County of Pitt, State of North Carolina, as authorized by N.C.G.S. § 1-82, in that at all times relevant, Plaintiff resided in this county, currently resides in this county, and the violations of law complained of herein all occurred in Pitt County.

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. On March 22, 2021, a Notice of Right to Sue was issued and mailed to the Plaintiff, via U.S. mail. Plaintiff has complied with all administrative prerequisites in order to bring this action.

## III. PARTIES

5. Plaintiff Dr. Dorothea Mack (hereinafter "Dr. Mack" or "Mack") is a Black, female citizen of the United States and of the State of North Carolina. Plaintiff's date of birth is July 13, 1979, and she is currently 41 years old. At all times relevant to this action, Plaintiff was a resident of Pitt County, North Carolina, and was employed by the Defendant East Carolina University, in Greenville, North Carolina, as an Associate Director of the Office of Greek Life Department.

6. Defendant East Carolina University ("ECU") is a constituent member of the University of North Carolina organized pursuant to N.C.G.S. § 116 *et seq.* and an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e *et. seq*.

7. Defendant, John Mountz (hereinafter "Mountz") is, upon information and belief, a citizen and resident of Wake County, North Carolina, and, at all times relevant to this action,

was the Director of the Office of Greek Life Department, and the Plaintiff's supervisor at East Carolina University.

8. Defendant, Dr. Grant Hayes (hereinafter "Hayes") is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and at all times relevant to this action, was the Interim Provost and Senior Vice-Chancellor of Academic Affairs at East Carolina University

9. Defendant, Dr. Philip Rogers (hereinafter "Rogers") is, upon information and belief, a citizen and resident of Pitt County, North Carolina, and serves as the Chancellor at East Carolina University.

## IV. FACTUAL BACKGROUND

10. Plaintiff Mack was employed in the Office of Greek Life Department (hereinafter "Department") since January 2012. In 2017, the Director of Office of Greek Life Department position became vacant, and Dr. Mack acted as the interim director and applied for the position. Dr. Mack received a prorated salary for the acting interim director role. She was not selected for the position and Defendant Mountz was hired for the position of Director of the Office of Greek Life Department in April 2017. Upon the hire of Mountz, Dr. Mack was promoted to Associate Director of the Office of Greek Life Department to honor Mack's longevity.

11. In July 2017, Mountz hired Jessica Ashton (hereinafter "Ashton"), a white, female, 27 years old, as an Assistant Director in the Office of Greek Life Department. Shortly after Ashton's hire, Mountz gave Ashton a new job title and a new job assignment as the Assistant Director of Risk Reduction.

12. In September 2017, Mountz hired Brandon Carta (hereinafter "Carta"), a white, male, 28 years old, as an Assistant Director. Shortly after Carta's hire, Mountz gave Carta a new job title and new job assignment as Assistant Director of Leadership. Carta was given the opportunity to work as the leadership programmer for the Office of Greek Life Department.

13. Plaintiff Mack had nine (9) years' experience in leadership and programming in the areas of Greek Life, housing and diversity, but Mountz did not consider her for the leadership programmer job assignment. After Ashton and Carta's new job assignments, Plaintiff Mack inquired with Mountz about her own professional development and Mountz stated about Ashton and Carta, "as young professionals, I can offer them a lot."

14. Prior to Mountz's hire, the Department was set up for Assistant Directors to be supervised by an Associate Director. Other ECU Student Involvement and Leadership departments also followed this model. After Mountz's hire into the Department, Dr. Mack was promoted to Associate Director. Mountz hired Ashton and Carta, and Mountz supervised Ashton and Carta. Plaintiff Mack was not allowed to supervise Ashton and Carta. Mountz did not follow the supervision organizational chart for Student Involvement and Leadership.

15. From approximately December 2017 through May 2018, Mountz excluded Dr. Mack from department operations communications and decisions, including the hiring of internship positions, interns' duties and the supervision of interns. Instead, Mountz allowed Ashton and Carta to supervise student interns, and Ashton and Carta's Greek Life students benefitted from having an intern available to assist them while Dr. Mack's Greek Life students were not afforded an intern.

16. In approximately January 2020 and February 2020, Mountz excluded Dr. Mack from the job description review for the Coordinator of the Office of Greek Life Department position, a position that Dr. Mack was to supervise. Mountz communicated with Dr. Mack that the job description review was still in process when it had been finalized and approved for posting in February 2020.

17. Mountz showed favoritism toward Ashton by referring to her as his "work daughter" in the presence of other Office of Greek Life Department staff, which made staff members uncomfortable. Mountz also invited Ashton to stay at his home when she was traveling from the Raleigh-Durham International Airport.

18. Mack was responsible for a Panhellenic Recruitment event held from August 24, 2017 through August 29, 2017, wherein ECU advisors were relying on Mack to conduct a successful event. Mountz asked multiple times to assist Mack, and when Mack asked Mountz to procure thirty stopwatches, he returned with one stopwatch. Mack had to ask someone else to procure the stopwatches and that person returned with the requested number of stopwatches. Mountz's conduct caused the event to be delayed, which adversely impacted Mack's relationship with the stakeholders.

19. During the Panhellenic Recruitment event, Mountz asked Mack again how he could assist with the event. Mack advised him to give out printed copies of the recruitment list to each advisor in their specific rooms, which was significantly important because each organization had specific students assigned to their room at specific times. Approximately 30 minutes after the Panhellenic event had started, several advisors expressed to Mack, in the presence of Mountz, their concern that they had not received a copy of the recruitment list for their organization. The advisors were upset and frustrated

because they could not confirm and identify the students that were assigned to their specific rooms. After the advisors were no longer present, Mountz informed Mack that he had not given several organizations their recruitment list. Mountz's actions created distrust with the advisors towards Mack. Mack's relationship with the stakeholders of this event was adversely impacted by Mountz's behavior.

20. In the fall 2019, Mountz and Plaintiff Mack attended a conference and while standing in the lobby of the hotel with other professional staff present, Mountz stated to Mack "I couldn't tell if you were in the room or not because you are always changing your hairstyle. You always look so different."

21. On November 12, 2019, Mountz sent an email to the Department stating that no raises would be given to state employees. In December 2019, Ashton received a pay increase of $3,500 and a lateral title change to Senior Assistant Director of Greek Life.

22. Plaintiff Mack had to perform Carta's job duties after he left ECU in the summer 2019 and Dr. Mack received no pay raise or title change for performing these additional duties. After Ashton left ECU in January 2020, Mack had to absorb Ashton's additional duties. Dr. Mack received a stipend, which is temporary compensation for additional duties, for performing her job and both Ashton's and Carta's job duties. However, Dr. Mack did not receive a lateral title change which had been afforded to Ashton.

23. In March 2020, Mountz consistently made racially offensive comments, including "What are y'all cooking up?" when Dr. Mack would hold weekly meetings with Brandon Ratliff, a black male Office of Greek Life Department employee. When Mack would meet with people of color in the Greek Life conference room, Mountz would comment to Mack "When I see y'all together in here, I get nervous."

24. In the summer 2018, Mountz had demonstrated unequal treatment to students of color by allowing white students of a suspended sorority to be eligible to hold positions when they did not meet the Panhellenic rule requirements. Dr. Mack informed Mountz that the students were not eligible for executive board positions or Pi Chi positions due to their inactive status on campus according to the guidelines and rules of Panhellenic. Mountz still allowed the students of the inactive sorority the opportunity to run for positions. Mountz only retracted the opportunity for these students when a white Panhellenic advisor complained about the students not being eligible to run for positions. As a result of the white Panhellenic advisor's complaint, the students were no longer allowed to run for positions. Mountz continued to undermine Dr. Mack's authority with an all-white female organization by meeting with them and advising against Dr. Mack's advisement when advising these students was a part of Plaintiff's job responsibilities.

25. Dr. Mack was responsible for the membership process for organizations within the department. As part of this responsibility, she was to host membership workshops to inform the Greek community of the membership policies and forms needed to be completed for the department. During the March 4, 2021 workshop, Dr. Mack learned that Mountz had created a new form for the students to fill out as part of the membership process. Mountz told Dr. Mack that he was not trying to leave her out, even though she was not aware of the new form, which was created in January 2021. Managing the membership workshops was part of Dr. Mack's job responsibilities.

26. Dr. Mack was the liaison between the Office of Student Rights and Responsibilities ("OSRR") and the Greek Life Office, now known as Student Engagement. As part of her responsibilities, she was to attend conduct meetings with OSRR staff, Greek Life

staff, students, advisors, and organization headquarters staff. During several of these meetings in spring 2021, Mountz shared that he had already met with or talked with the advisor of organizations prior to the meeting. During the scheduled meetings, Dr. Mack was unaware of any agreements or information shared because Mountz has interceded, without her knowledge, and had taken on her responsibilities.

27. During the spring of 2021, Mack met with a member of the OSRR staff, a student, and an advisor to discuss a conduct incident. Mack sought Mountz's assistance to confirm if a student was in a specific organization because Mack's access to this information was not accessible. After Mountz provided Mack with the student information, including stating that the student was a freshman, Mountz then told Mack "you and I are getting old."

28. As a result of the Defendants' conduct, Plaintiff has suffered discrimination, damage to her career and other emotional pain and suffering.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT EAST CAROLINA UNIVERSITY RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e et. seq.

29. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 28 and incorporates the same herein as though fully set forth.

30. By its actions, East Carolina University has treated the Plaintiff differently than similarly situated individuals because of her race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, et. seq. More specifically,

a) Plaintiff is a member of racially minority group;

b) Plaintiff suffered racially offensive comments from Mountz that was not directed to those similarly situated white individuals;

c) Plaintiff did not receive a raise and job promotion in 2019 due to her race when a similarly situated white individual received a raise after Defendant ECU notified its employees in writing that no one would receive a raise;

d) That Plaintiff was not afforded development opportunities and a broader span of control due to her race than those similarly situated white individuals;

31. By its actions, Defendant has discriminated and continues to discriminate against Plaintiff with respect to her employment on account of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, and Defendant has therefore committed unlawful employment practices, entitling Plaintiff to relief.

32. Proximately, directly, and solely as a result of ECU's discrimination against Plaintiff on account of her race, Plaintiff has suffered and continues to suffer damages consisting of lost employment benefits, damage to her career, great mental distress, and other damages. Plaintiff is, therefore, entitled to recover compensatory damages, back pay, and other equitable relief as provided by law.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT EAST CAROLINA UNIVERSITY AGE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e et. seq.**

33. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 32 and incorporates the same herein as though fully set forth.

34. By its actions, East Carolina University has treated the Plaintiff differently than similarly situated individuals because of her age, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, et. seq. More specifically,

a) Plaintiff suffered offensive comments in reference to her age from Mountz that was not directed to those similarly situated younger individuals;

b) That Plaintiff was not afforded development opportunities and a broader span of control due to her age than those similarly situated younger individuals;

35. By its actions, Defendant has discriminated and continues to discriminate against Plaintiff with respect to her employment on account of her age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, and Defendant has therefore committed unlawful employment practices, entitling Plaintiff to relief.

36. Proximately, directly, and solely as a result of ECU's discrimination against Plaintiff on account of her age, Plaintiff has suffered and continues to suffer damages consisting of lost employment benefits, damage to her career, great mental distress, and other damages. Plaintiff is, therefore, entitled to recover compensatory damages, back pay, and other equitable relief as provided by law.

**THIRD CLAIM FOR RELIEF**

VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT MOUNTZ, DEFENDANT HAYES, AND DEFENDANT ROGERS, IN THEIR INDIVIDUAL CAPACITIES

37. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 36 and incorporates the same herein as though fully set forth.

38. Acting under the color of state law, Defendants treated Plaintiff differently than other similarly situated employees because of her race, and their discriminatory treatment of the Plaintiff was not related to any important governmental objective.

39. Mountz treated Mack differently than similarly situated white employees when he made racially offensive comments to Mack about her hair and when she was meeting with other people of color. Furthermore, Mountz treated Plaintiff differently than other similarly situated white employees when he, in violation of university policies and procedures, failed to allow Mack to supervise Assistant Directors and other subordinate staff.

Mountz was deliberately indifferent to Plaintiff's rights when he attempted to undermine Plaintiff's position by a lack of support and contradicting her communications with white students and giving white student groups preferential treatment to hold positions when they were not eligible.

40. Defendants Hayes and Rogers treated Plaintiff differently than similarly situated white employees when they permitted Mountz to discriminate against Plaintiff due to her race in violation of university policy and procedure and where they knew, or should have known, that Plaintiff was treated in a discriminatory fashion. Defendants Hayes and Rogers knew or should have known that the conduct of Defendant Mountz violated Plaintiff's federally protected rights.

41. Acting under the color of state law, Defendants treated Plaintiff differently than other similarly situated employees because of her age, and their discriminatory treatment of the Plaintiff was not related to any important governmental objective.

42. Defendant Mountz treated Plaintiff differently than similarly situated younger employees when Plaintiff suffered offensive comments in reference to her age from Mountz, and when Plaintiff was not afforded development opportunities and a broader span of control due to her age than those similarly situated younger individuals.

43. As an affirmative consequence of Mountz's conduct and Hayes and Rogers deliberate indifference and/or tacit authorization of Mountz's conduct, Plaintiff has experienced a deprivation of her rights under federal law to receive equal treatment.

44. Defendants' disparate treatment of Plaintiff constitutes a violation of the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution.

45. Said misconduct by these Defendants, proximately caused Plaintiff substantial damages including but not limited to front pay loss, and back benefit loss, loss of earning capacity, emotional distress, loss of career development and reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

46. Said misconduct by the individual Defendants was willful, malicious and/or intentional and/or undertaken in reckless disregard of Plaintiff's civil rights thereby entitling her to an award of punitive damages against these Defendants in their individual capacities.

47. Defendants failed to act reasonably to protect Plaintiff's clearly established legal rights.

**FOURTH CLAIM AGAINST DFENDANT EAST CAROLINA UNIVERSITY VIOLATION OF NORTH CAROLINA EQUAL EMPLOYMENT PRACTICES PUBLIC POLICY**

48. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 47 and incorporates the same herein as though fully set forth.

49. Defendant violated N.C.G.S. §§ 143-422.2 and 143-422 when Plaintiff was discriminated against due to her race and age. North Carolina public policy protects and safeguards the rights and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race and age.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays to the Court:

1. AS TO FIRST CLAIM FOR RELIEF

   a. For judgment against Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to 42 U.S.C. § 1981, for the discrimination of Plaintiff's civil rights to be free from race discrimination in employment.

b. For a judgment declaring the employment practices of Defendant alleged herein to be unlawful;

c. For an order requiring Defendant to make whole the Plaintiff by providing Plaintiff appropriate back pay, front pay and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

d. For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988.

2. AS TO SECOND CLAIM FOR RELIEF

a. For judgment against Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to 42. U.S.C. § 2000e, for the discrimination of Plaintiff's civil rights to be free from age discrimination in employment.

b. For a judgment declaring the employment practices of Defendant alleged herein to be unlawful;

c. For an order requiring Defendant to make whole the Plaintiff by providing Plaintiff appropriate back pay, front pay and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

d. For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988.

3. AS TO THE THIRD CLAIM FOR RELIEF:

a. The Court declare the Defendants' actions are unlawful and unconstitutional, violating the Fourteenth Amendment of the U.S. Constitution;

b. The Court permanently enjoin Defendants, their agents, successors, and employees from engaging in or continuing any and all practices found by this Court to be unlawful or unconstitutional;

c. Plaintiffs recover lost employee benefits she would have received but for Defendant's unlawful acts;

d. Plaintiff recover of Defendants compensatory damages in amounts to be proved at trial;

e. Plaintiff recover of Defendants in their individual capacity, punitive damages;

f. Plaintiff recover the costs of this action, including a reasonable attorney's fees, as by law allowed;

4. AS TO THE FOURTH CLAIM FOR RELIEF:

a. For judgment against Defendant in such sums as a jury may award as compensatory and punitive damages pursuant to N.C.G.S. §§ 143-422.2 and 143-422.

b. For an order requiring Defendant to make whole the Plaintiff by providing Plaintiff appropriate back pay, front pay and reimbursement for lost benefits in an amount to be shown at trial, and by granting Plaintiff other appropriate affirmative relief;

c. For recovery of Plaintiff's costs herein, including a reasonable attorney's fee pursuant to the provisions of the law.

5. For a trial by jury trial on all issues of fact; and

6. For such other relief as may be just and proper.

This the 11th of June, 2021.

LISA WALKER, ATTORNEY AT LAW PLLC

BY: ______________________________

Lisa Walker
NC Bar #47809
P.O. Box 1473
Knightdale, NC 27545
Telephone: (919) 719-2730
Facsimile: (919) 719-2799
*Attorney for Plaintiff*