IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:21-CV-00108-M

| | | |
|---|---|---|
| DR. DOROTHEA MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| EAST CAROLINA UNIVERSITY, a | ) | |
| constituent institution of the University of | ) | |
| North Carolina; | ) | |
| JOHN MOUNTZ, in his individual and | ) | |
| official capacities; | ) | |
| DR. GRANT HAYES, in his individual and | ) | |
| official capacities; | ) | |
| DR. PHILIP ROGERS, in his individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on Defendants' Motion to Dismiss [DE 10]. Defendants

seek an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing this

case for the Plaintiff's failure to state plausible claims for relief against them. For the following

reasons, Defendants' motion is granted.

## I.  Background

### A.  Plaintiff's Statement of Facts

The following are relevant factual allegations (as opposed to statements of bare legal

conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in

the operative Amended Complaint (DE 24), which the court must accept as true at this stage of the

proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

The Plaintiff, Dr. Dorothea Mack, is a 42-year-old Black female, who was employed by Defendant East Carolina University ("ECU") in the Office of Greek Life Department since January 2012. In 2017, when the position of Director of Office of Greek Life became available, Plaintiff acted as the interim director (for which she received a prorated salary) and applied for the position. In April 2017, ECU hired Defendant John Mountz, a white male, for the director position and Plaintiff was promoted to Associate Director of the Office of Greek Life.

Mountz hired two white employees—younger than Plaintiff—in 2017 (Ashton and Carta) and gave each of them new job titles and new job assignments, one of which encompassed duties for which Plaintiff was uniquely qualified. When Plaintiff asked Mountz about her own professional development, Mountz referenced Ashton and Carta saying, "as young professionals, I can offer them a lot." Ashton and Carta each held the title of "Assistant Director," a position that historically reported to the Associate Director; however, Mountz directed that they, like the Plaintiff, report to him.

In August 2017, Plaintiff was responsible for holding a Panhellenic recruitment event. Mountz asked to assist Plaintiff and, twice, she requested his help only to learn that he did not do what she asked. Mountz' conduct caused the event to be delayed, resulted in several university advisors becoming upset and frustrated, and Plaintiff's relationship with the event's stakeholders to be adversely impacted.

From December 2017 to May 2018, Mountz excluded Plaintiff from department operations, communications, and decisions, including the hiring and supervision of interns. Mountz permitted Carta and Ashton to supervise student interns; as a result, Carta's and Ashton's "Greek Life" students benefitted from having a student intern assist them, while Plaintiff's students did not.

In the summer 2018, Mountz allowed white students of a suspended sorority to be eligible to hold positions when they did not meet the Panhellenic rule requirements. Plaintiff informed Mountz that the students were not eligible according to the guidelines and rules of Panhellenic to run for executive board or Pi Chi positions due to their inactive status on campus, but Mountz only retracted his permission when a white Panhellenic advisor complained about the students not being eligible to run. In addition, Mountz undermined Plaintiff's authority with an all-white female organization by meeting with them and providing them contrary advice, when advising these students was a part of Plaintiff's job responsibilities.

In the fall 2019, Mountz and Plaintiff attended a conference and while standing in the lobby of the hotel with other professional staff present, Mountz stated to Plaintiff, "I couldn't tell if you were in the room or not because you are always changing your hairstyle. You always look so different." In March 2020, Mountz made comments, including "What are y'all cooking up?" when Plaintiff held weekly meetings with Brandon Ratliff, a black male Office of Greek Life Department employee, and when Plaintiff met with people of color in the Greek Life conference room, Mountz commented to Plaintiff, "When I see y'all together in here, I get nervous."

In the summer 2019, Plaintiff was required to perform Carta's job duties after he left ECU and she received no pay raise or title change for performing these additional duties. On November 12, 2019, Mountz sent an email to the Department stating that no raises would be given to state employees. In December 2019, Ashton received a pay increase of $3,500 and a lateral title change to Senior Assistant Director of Greek Life. After Ashton left ECU in January 2020, Plaintiff also assumed Ashton's duties. Plaintiff received a stipend for performing her job and both Ashton's and Carta's job duties; however, she did not receive a pay increase or lateral title change like those afforded to Ashton the previous month.

3

In approximately January and February 2020, Mountz excluded Plaintiff from reviewing the job description for a Coordinator of the Office of Greek Life Department, a position that Plaintiff was to supervise. Mountz told Plaintiff that review was still in process when it had been finalized and approved for posting in February 2020.

Plaintiff was the liaison between the Office of Student Rights and Responsibilities ("OSRR") and the Greek Life Office, now known as Student Engagement. As part of her responsibilities, she was to conduct meetings with OSRR staff, Greek Life staff, students, advisors, and organization headquarters staff. During several of these meetings in the spring 2021, Mountz told Plaintiff that he had already met or talked with the advisor of organizations prior to the meeting. During the scheduled meetings, Plaintiff was unaware of any agreements or information shared because Mountz had interceded, without her knowledge, and had taken on her responsibilities.

Plaintiff was responsible for the membership process for organizations in the department and, as part of her duties, she hosted membership workshops to inform the Greek community of membership policies and required forms. During a March 4, 2021 workshop, Plaintiff learned that Mountz had created a new membership form in January 2021 and failed to inform her.

Also during the spring 2021, Plaintiff met with a member of the OSRR staff, a student, and an advisor to discuss a "conduct" incident. Plaintiff sought Mountz's assistance to confirm whether a student was in a specific organization, because Plaintiff did not have access to this information. After Mountz provided Plaintiff with the student information, including stating that the student was a freshman, Mountz told Plaintiff, "You and I are getting old."

B.    Procedural History

Plaintiff initiated this action on June 18, 2021, in the Superior Court for Pitt County, North

4

Carolina, alleging discrimination on the bases of race and age in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") against ECU, and violations of her Fourteenth Amendment rights to equal protection against Mountz, Grant Hayes, and Philip Rogers, in their individual capacities. Defendants removed the action on August 9, 2021, and on August 16, 2021, filed the present motion to dismiss the operative Complaint, arguing that Plaintiff's claims are time-barred and/or she fails to state plausible claims for relief. Plaintiff responded on September 7, 2021, countering that her race claim is timely under Title VII and 42 U.S.C. § 1981, her age claim may be properly pled in an amended pleading, her equal protection claim is not preempted by the Age Discrimination in Employment Act (ADEA), and she states plausible claims against all individual Defendants. Defendants reply that Plaintiff does not refute that her state law claim contains no private cause of action, Title VII permits no recovery for age discrimination, she alleges no discriminatory conduct by Hayes and Rogers, and her Section 1983 claims relying on conduct prior to July 2018 are time-barred; further, Defendants assert that Plaintiff fails to rebut their arguments concerning the remainder of her claims.

## II.    Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the pleading and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

5

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the non-movant's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). *Twombly*'s plausibility standard requires that the non-movant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Courts must draw all reasonable inferences in favor of the non-movant. *E.I. du Pont de Nemours*, 637 F.3d at 440.

III.  **Analysis**

The court finds initially that Plaintiff concedes she is not permitted to recover on her fourth claim for relief for violation(s) of the Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA"). *See Johnson v. North Carolina*, 905 F. Supp. 2d 712, 724 (W.D.N.C. 2012) ("While the NCEEPA 'clearly pronounces the State's public policy,' the Act itself amounts to little more than a declarative policy statement that affords plaintiffs no statutory remedies or private

6

causes of action for its violation.") (quoting *Strickland v. Jewell*, 562 F.Supp.2d 661, 674 (M.D.N.C. 2007); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("Absent a clear indication from the North Carolina courts or legislature, it would be inappropriate for a federal court to create a private right of action under the NCEEPA"); *cf. Leonard v. Wake Forest Univ.*, 877 F. Supp. 2d 369, 372 (M.D.N.C. 2012) ("While the statute does not create a private right of action, *see McNeil v. Scotland County*, 213 F. Supp. 2d 559, 570 (M.D.N.C. 2002), a plaintiff can bring a common law claim for wrongful discharge based on a violation of the public policy expressed in N.C. Gen. Stat. § 143–422.2."). Accordingly, the court dismisses Plaintiff's fourth claim for relief.

Also, Plaintiff does not dispute that she is not permitted to seek relief under Title VII for discrimination based on her age. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011) ("Title VII makes it 'an unlawful employment practice for [a private] employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion, sex, or national origin*.") (citing 42 U.S.C.A. § 2000e–2(a)(1)) (emphasis added). Plaintiff contends that she "could amend her complaint to include the ADEA claim,"[1] but she has not amended nor sought amendment of her pleading. The court dismisses Plaintiff's second claim for relief as pled in the operative Complaint.

Further, Plaintiff may not seek punitive damages against ECU under Title VII. *Williams v. Guilford Tech. Cmty. Coll. Bd. of Trustees*, 117 F. Supp. 3d 708, 716 (M.D.N.C. 2015) ("For claims under Title VII, punitive damages are not recoverable against 'a government, government agency or political subdivision.'") (citing 42 U.S.C. § 1981a(b)(1)).

---

[1] Resp. at 11, DE 16. As set forth in detail below, the court will not construe this statement as a "motion" for leave to amend the statutory reference in the second claim for relief; the court finds on Plaintiff's allegations that she fails to state a plausible claim of age discrimination.

7

Moreover, Plaintiff alleges conduct in support of her Section 1983 claim that occurred in 2017 and early 2018; however, "the state statute of limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983" and "North Carolina has a three-year statute of limitations for personal injury actions." *Perry v. Pamlico Cty.*, 88 F. Supp. 3d 518, 529 (E.D.N.C. 2015). Therefore, any claim under Section 1983 based on conduct that occurred prior to June 18, 2018, is dismissed.

With respect to the remaining first and third claims for relief, the court finds as follows.

A.    Race Discrimination – Title VII

At the outset, the court agrees with Defendants that Plaintiff does not allege a claim for discrimination under 42 U.S.C. § 1981 in the operative Complaint.[2] *Int'l Coal. for Religious Freedom v. State of Maryland*, 3 F. App'x 46, 51 n.6 (4th Cir. 2001) ("The district court was under no obligation to consider claims not raised in the complaint when ruling on appellees' motion to dismiss ...."). Rather, Plaintiff alleges:

> **FIRST CLAIM FOR RELIEF AGAINST DEFENDANT EAST CAROLINA UNIVERSITY RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e et. seq.**
>
> 29. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 28 and incorporates the same herein as though fully set forth.

---

[2] Plaintiff argues in her response brief that she "seeks relief for race discrimination pursuant to Title VII of the Civil Rights Act *and 42 U.S.C. § 1981* and Plaintiff's First Claim for Relief is for the same." Resp. at 6 (emphasis added). Plaintiff's first claim for relief specifically identifies Title VII as the source of the claim; her only reference to Section 1981 in the Complaint is found in her prayer for relief in which she requests "judgment against Defendant in such sums as a jury may award as compensatory and punitive damages, pursuant to 42 U.S.C. § 1981[a], for the discrimination of Plaintiff's civil rights to be free from race discrimination in employment." Compl. at 12. Section 1981a governs damages in cases of intentional discrimination in employment and provides that a Title VII claimant may recover compensatory and punitive damages, "in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent." 42 U.S.C. § 1981a(a)(1).

8

30. By its actions, East Carolina University has treated the Plaintiff differently than similarly situated individuals because of her race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, et. seq. More specifically,

   a)   Plaintiff is a member of racially minority group;

   b)   Plaintiff suffered racially offensive comments from Mountz that was not directed to those similarly situated white individuals;

   c)   Plaintiff did not receive a raise and job promotion in 2019 due to her race when a similarly situated white individual received a raise after Defendant ECU notified its employees in writing that no one would receive a raise;

   d)   That Plaintiff was not afforded development opportunities and a broader span of control due to her race than those similarly situated white individuals;

31. By its actions, Defendant has discriminated and continues to discriminate against Plaintiff with respect to her employment on account of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e, and Defendant has therefore committed unlawful employment practices, entitling Plaintiff to relief.

32. Proximately, directly, and solely as a result of ECU's discrimination against Plaintiff on account of her race, Plaintiff has suffered and continues to suffer damages consisting of lost employment benefits, damage to her career, great mental distress, and other damages. Plaintiff is, therefore, entitled to recover compensatory damages, back pay, and other equitable relief as provided by law.

Compl., DE 1-3. Defendants contend that Plaintiff's Title VII claim is time-barred for any conduct that occurred more than 180 days before Plaintiff filed her October 3, 2020 charge of

discrimination[3] with the Equal Employment Opportunity Commission ("EEOC")—i.e., before April 6, 2020.[4] Plaintiff counters that Defendants' alleged conduct constitutes a "continuing violation" and, thus, the claim is timely so long as one of Defendants' continuing actions occurred within the limitations period. Defendants reply that Plaintiff's allegations reflect only discrete acts and, thus, the acts do not make up a "continuing violation."

"The continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination, i.e., when the incidents make up part of a hostile work environment claim." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Claimants alleging discrete violations cannot benefit from the continuing violations theory. *Id.* Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 220 (quoting *Morgan*, 536 U.S. at 113).

Here, taking Plaintiff's allegations as true and construing them in her favor, the court finds Plaintiff attempts to allege a hostile work environment in violation of Title VII.[5] The Supreme

---

[3] Plaintiff argues that she "initially filed her discrimination claims electronically with the [EEOC] on March 15, 2020. Due to COVID-19, the EEOC failed to timely respond to Plaintiff's claims to schedule an intake interview." Resp. at 6. Plaintiff does not allege this information in her pleading nor attaches any document or declaration supporting it; nevertheless, she bases her arguments on the October 3, 2020 charge of discrimination, *see id.*, and, on these, the court will proceed.

[4] The court may consider Plaintiff's charge of discrimination without converting the motion to dismiss into one for summary judgment. *See Brown v. Inst. For Fam. Centered Servs., Inc.*, 394 F. Supp. 2d 724, 729 n.2 (M.D.N.C. 2005) ("The EEOC charge is referenced in Plaintiff's complaint and is central to Plaintiff's claim in that Plaintiff must rely on it to establish she has exhausted her administrative remedies."). Plaintiff also relies on the charge of discrimination, a copy of which is attached to Defendants' motion, for her arguments.

[5] Otherwise, the discrete acts Plaintiff alleges against ECU, such as the failure to award her a title and a pay raise when Ashton, a white female assistant director, received them (to the extent the acts are found to be "adverse employment actions" under Title VII), are time-barred. *Holland*, 487 F.3d at 220.

Court instructs that a hostile work environment prohibited by Title VII is one that is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 158 (4th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To show that conduct was sufficiently severe or pervasive to support a harassment claim under Title VII, a plaintiff "must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 368 (4th Cir. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001)). In determining whether a reasonable person would perceive an environment as hostile, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (citing *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Evidence of mere "rude treatment" or "callous behavior" ordinarily does not suffice to create a hostile work environment. *Jessup*, 23 F.4th at 368 (citing *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16).

In *Jessup*, the court found the following evidence insufficient to demonstrate an objectively hostile work environment under the Americans with Disabilities Act ("ADA"): plaintiff was (1) declined a meeting with the company president when he was preparing to return from leave; (2) transferred to a different position upon his return; (3) given a "below expectations" performance evaluation; (4) told by the president that he would have been a "risk" to the company because of

11

his health; and (5) required to meet a sales quota that was increased by $2 million. *Id.* at 368-69.[6] The court finds that, like the plaintiff in *Jessup*, even if Plaintiff's allegations suffice to show she subjectively perceived her work environment as hostile, she fails to plausibly allege that a reasonable person would perceive it as such.

Plaintiff argues that "the latest discrimination occurred in August 2020, which is well within the EEOC 180-day statute of limitations." Resp. at 6. Plaintiff does not identify this conduct and the Complaint mentions nothing about conduct in August 2020. *See* Complaint, DE 1-3. In fact, the Complaint identifies no conduct between "March 2020" and "the spring 2021." *See id.* In her "statement of facts" in the response brief, Plaintiff quotes a section of her October 3, 2020 charge of discrimination, in which she states, "Since students returned to campus in August 2020, Mountz has continued to discriminate against me by excluding me from meetings that pertain to my work duties and interfering with my ability to perform my job because he assumes my role." Resp. at 4, DE 16 (citing Defendants' Exhibit A, Charge of Discrimination). However, a proffered argument is not a pleaded factual allegation and, therefore, the court may find that the Complaint fails to state a timely hostile work environment claim. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (same); *cf. Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (citations omitted) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

_____

[6] The Fourth Circuit analyzes hostile work environment claims under the ADA the same as those under Title VII. *See id.*

12

Assuming for purposes of this analysis that the Complaint contains the August 2020 allegation, the court finds that exclusion from meetings may be considered as part of a hostile work environment claim, *see Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 305 (4th Cir. 2019) and, thus, Plaintiff's hostile work environment claim, to the extent it is plausible, would be timely. However, in *Parker*, the court found the allegations stated a severe or pervasive work environment where the plaintiff was the subject of a false rumor that she was having an affair with a manager; at an all-staff meeting, another manager slammed the door in her face and the affair was discussed with her co-workers; the same manager "screamed" at her during another meeting saying he should have fired her because of the affair; she was humiliated and experienced "open resentment and disrespect" from her co-workers and subordinates; she was informed she could receive no further promotions in the company; and she was finally terminated because of the rumored affair. *Id.* at 305-06.

This court finds the allegations here reflect an environment wholly unlike *Parker* and not as severe or pervasive as the insufficient allegations in *Jessup*. Plaintiff alleges that, over the course of four years, Mountz "assumed her role"; performed some of her duties and communicated with others without her knowledge; excluded her from meetings; hired two white assistant directors, Ashton and Carta, the latter for a position for which Plaintiff was uniquely qualified; paid her for the duties she assumed from Carta and Ashton after they left but did not increase her pay or give her a title; made a comment about not recognizing her because her hair style changed often; asked "what are y'all cooking up?" when she met with another Black employee; said, "when I see you all in here together, I get nervous," when she met with people of color in a conference room; failed to complete tasks she assigned during an event and made her look bad to the advisors and participants; excluded her from reviewing a job description for a position she supervised;

13

excluded her from hiring and supervising student interns; drafted a new membership form without telling her; "undermined" her authority when he met with an all-white female organization and gave them contrary advice; and told her "we're getting old" when providing her requested information about a freshman student.

The court finds the alleged conduct is not "pervasive" as necessary to state a plausible Title VII claim. *See Perkins*, 936 F.3d at 208 (4th Cir. 2019) ("[S]imple teasing, offhand comments, and *isolated incidents* (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) ("To be sure, viable hostile work environment claims often involve *repeated* conduct.") (emphasis added). Plaintiff does not allege that she suffered repeated daily, weekly, or even monthly racial conduct by Mountz (or anyone else) from April 2017 through the "spring 2021."

Further, Plaintiff alleges nothing indicating that Mountz's conduct was physically threatening or humiliating, or unreasonably interfered with her ability to perform her job; Plaintiff does not allege that the increased workload and assumption of her role caused her to fail to do her job or to be written up, reprimanded, or otherwise punished for failing to complete her duties. Moreover, an objectively reasonable person would not find the three alleged comments by Mountz to be "severe" sufficient to create an abusive environment. *See Singleton v. Astro Holdings Co., LLC*, No. 5:21-CV-00020, 2021 WL 5177456, at *4 (W.D. Va. Nov. 8, 2021) (a manager's reference to the plaintiff as "the big black angry guy" insufficient to state a hostile work environment). "[A] single offensive utterance—e.g., simple teasing or an offhand comment— generally will not create a hostile environment *without significant repetition or an escalation in the harassment's severity*." *Boyer-Liberto*, 786 F.3d at 277 (emphasis added).

The court finds that, while Mountz's actions against Plaintiff could be perceived by a reasonable person as upsetting, disappointing, and unfair, they do not rise to the level of severe or pervasive necessary to state a plausible Title VII hostile work environment claim. *See Mallik v. Sebelius*, 964 F. Supp. 2d 531, 548 (D. Md. 2013) ("courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance") (citation omitted); *cf. Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (plaintiff "present[ed] a strong claim for hostile work environment" where, in four months, she experienced (1) disparaging jokes about gays and lesbians; (2) comments about herself and a Jacuzzi fantasy; (3) comments about herself and group sex fantasy; (4) questions about her underwear; (5) comments about sexual relations with another African–American woman; (6) additional inquiries about her sitting on a lap and Jacuzzi fantasy; (7–10) several incidents of fondling her leg under a table; (11) forcible kissing; and (12) more propositions to join in a Jacuzzi fantasy); *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (fact issues regarding harassment claim based on sex existed where, in five months at a police academy, the plaintiff "heard her fellow recruits brazenly and repeatedly describe a sexual encounter with a sixteen-year-old girl" and "heard recruits and instructors make dozens of references to women as 'bitches,' 'crazy,' 'white trash,' 'ghetto,' and 'prostitutes,' was called a 'bitch' herself by an instructor, and was consistently subjected to selective taunting"); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 298 (4th Cir. 2004) (plaintiff's evidence of supervisors' repeated use of blatantly racial offensive terms was sufficient for a jury to find severe or pervasive harassment); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182-84 (4th Cir. 2001) (plaintiff demonstrated harassment was severe and pervasive where he was exposed on a "continuous daily" basis to blatantly racist slurs).

15

Plaintiff fails to allege a plausible claim that Defendants' alleged actions, taken as true, were severe or pervasive as necessary for a Title VII hostile work environment claim and, thus, the court grants Defendants' motion to dismiss Plaintiff's first claim for relief.

B.    Race Discrimination – Equal Protection

Plaintiff's third claim for relief alleges violations of her right to equal protection based on her race and age against the individual Defendants.[7]  Specifically, Plaintiff alleges:

**THIRD CLAIM FOR RELIEF**
VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION
PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT MOUNTZ, DEFENDANT
HAYES, AND DEFENDANT ROGERS, IN THEIR INDIVIDUAL CAPACITIES

37. Plaintiff repeats and realleges by reference each and every allegation contained in

paragraphs 1 through 36 and incorporates the same herein as though fully set forth.

38. Acting under the color of state law, Defendants treated Plaintiff differently than other

similarly situated employees because of her race,  and their discriminatory treatment of

the Plaintiff was not related to any important governmental objective.

39. Mountz treated Mack differently than similarly situated white employees when he made

racially offensive comments to Mack about her hair and when she was meeting with other

people of color.  Furthermore, Mountz treated Plaintiff differently than other similarly

situated white employees when he, in violation of university policies and procedures,

failed to allow Mack to supervise Assistant Directors and other subordinate staff.

---

[7] In the caption of the Complaint, Plaintiff lists the individual Defendants "in their individual and official capacities."  Compl., DE 1-3.  Defendants argue that Plaintiff alleges no claim(s) against the Defendants in their official capacities.  Mot. at 3.  While "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and in essence are "suit[s] against the entity." *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The court agrees that the only claims Plaintiff alleges against the entity, ECU, are the Title VII and state law claims which do not permit official-capacity claims; thus, the court will dismiss the individual Defendants in their official capacities.

Mountz was deliberately indifferent to Plaintiff's rights when he attempted to undermine Plaintiff's position by a lack of support and contradicting her communications with white students and giving white student groups preferential treatment to hold positions when they were not eligible.

40. Defendants Hayes and Rogers treated Plaintiff differently than similarly situated white employees when they permitted Mountz to discriminate against Plaintiff due to her race in violation of university policy and procedure and where they knew, or should have known, that Plaintiff was treated in a discriminatory fashion. Defendants Hayes and Rogers knew or should have known that the conduct of Defendant Mountz violated Plaintiff's federally protected rights.

41. Acting under the color of state law, Defendants treated Plaintiff differently than other similarly situated employees because of her age, and their discriminatory treatment of the Plaintiff was not related to any important governmental objective.

42. Defendant Mountz treated Plaintiff differently than similarly situated younger employees when Plaintiff suffered offensive comments in reference to her age from Mountz, and when Plaintiff was not afforded development opportunities and a broader span of control due to her age than those similarly situated younger individuals.

43. As an affirmative consequence of Mountz's conduct and Hayes and Rogers deliberate indifference and/or tacit authorization of Mountz's conduct, Plaintiff has experienced a deprivation of her rights under federal law to receive equal treatment.

44. Defendants' disparate treatment of Plaintiff constitutes a violation of the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution.

45. Said misconduct by these Defendants, proximately caused Plaintiff substantial damages including but not limited to front pay loss, and back benefit loss, loss of earning capacity, emotional distress, loss of career development and reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages in the future.

17

46. Said misconduct by the individual Defendants was willful, malicious and/or intentional and/or undertaken in reckless disregard of Plaintiff's civil rights thereby entitling her to an award of punitive damages against these Defendants in their individual capacities.

47. Defendants failed to act reasonably to protect Plaintiff's clearly established legal rights.

Compl. at 11-12. An "equal protection claim based on alleged employment discrimination" is properly "analyzed under standards developed for litigation under Title VII." *See Disher v. Weaver*, 308 F. Supp. 2d 614, 626–27 (M.D.N.C. 2004) (citing *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994)).

The court notes that, in advancing her position, the Plaintiff cites "required elements" of the Plaintiff's claims (*see* Resp. at 9), which are typically used to determine whether a plaintiff, relying on indirect evidence to prove his claims, has demonstrated genuine issues of material fact sufficient to survive summary judgment pursuant to Rule 56. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649-50 (4th Cir. 2021). These "required elements" constitute what has been characterized as a "prima facie" case, which a Title VII plaintiff must prove to shift the burden of production to the defendant. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020) ("Under [*McDonnell Douglas*], once a plaintiff establishes a prima facie case of [ ] discrimination through indirect proof, the defendant bears the burden of producing a [ ]neutral explanation for its action, after which the plaintiff may challenge that explanation as pretextual.") (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257–258 (1981)).

However, "an employment discrimination plaintiff need not *plead* a prima facie case of discrimination . . . to survive [a] motion to dismiss, because the prima facie case . . . is an evidentiary standard, not a pleading requirement that may require demonstrating more elements than are otherwise required to state a claim for relief." *McCleary-Evans v. Maryland Dep't of*

18

*Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (internal quotation marks and citation omitted) (emphasis added). Therefore, "the ordinary rules for assessing the sufficiency of a complaint [including Federal Rule of Civil Procedure 8(a)(2)] apply" and, in accordance with *Iqbal* and *Twombly*, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by" Title VII or, in this case, the Fourteenth Amendment equal protection clause. *Id.* at 585.

The individual Defendants argue they are entitled to qualified immunity from the Plaintiff's third claim for relief. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court will begin by "tackling" the first prong. *See id.*

"The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *Disher*, 308 F. Supp. 2d at 627 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). The Fourth Circuit has held that to succeed on an equal protection claim, a plaintiff must show she was "treated differently from others with whom [s]he [was] similarly situated," and the "unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Here, the court finds Plaintiff fails to state a plausible claim for equal protection based on race.

First, the face of the Complaint reflects that the statute of limitations applies to bar a portion of Plaintiff's third claim for relief. "North Carolina's three-year statute of limitation applies to claims under [42 U.S.C.] § 1983 . . ., and federal law controls when the statute of limitations beings

19

to run." *Maisha v. Univ. of N. Carolina*, 641 F. App'x 246, 249 (4th Cir. 2016) (citing *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 67 (4th Cir. 2015) and *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011)). "A cause of action for discrimination cases accrues on the date that the alleged unlawful conduct occurred." *Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (citing *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998)). As each event alleged in the Complaint relates to a discrete act that was not repeated by Mountz, the court finds any Section 1983 claim based on conduct that occurred before June 18, 2018, to be time-barred.

Next, Defendants assert that Plaintiff fails to allege discriminatory conduct on the part of Hayes, Interim Provost and Senior Vice-Chancellor of Academic Affairs at ECU, and Rogers, Chancellor at ECU. Compl. at ¶¶ 8, 9. The court agrees. Plaintiff mentions neither Hayes nor Rogers in the factual allegations of the Complaint; they first appear in the third claim for relief in which Plaintiff alleges they "permitted Mountz to discriminate against Plaintiff ... where they knew or should have known that Plaintiff was treated in a discriminatory fashion." Compl., ¶ 40.

The Supreme Court has "rejected" the Plaintiff's contention that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Iqbal*, 556 U.S. at 677.

> In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Id.* A Fourth Circuit concurrence has cited this portion of *Iqbal* stating, "the Supreme Court explained in *Iqbal* that 'a supervisor's mere knowledge' that his subordinates are engaged in

unconstitutional conduct is insufficient to give rise to liability; instead, a supervisor can be held liable only for 'his or her own misconduct.'" *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring).

Thus, to state a plausible claim that a supervisor is liable under Section 1983, a plaintiff must allege the supervisor, by his own conduct, (1) knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" and (2) showed "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was an "affirmative causal link" between his inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

> As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Finally, as to the third element, "proof of causation may be direct ... where the policy commands the injury of which the plaintiff complains ... or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions."

*Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). Here, Plaintiff alleges no conduct on the part of Hayes or Rogers that would allow the court to draw a reasonable inference that they knew or should have known Mountz engaged in the alleged conduct and were deliberately indifferent to, or tacitly authorized, his conduct. Plaintiff's allegation that the interim provost and chancellor of the university "permitted" Mountz to engage in the conduct with actual or constructive knowledge is insufficient under *Iqbal* to demonstrate more than mere *respondeat superior*. Without more, the court finds Hayes and Rogers are entitled to qualified immunity.

21

Finally, for the Plaintiff's claim against Mountz based on the alleged conduct after June 18, 2018, the court finds the Complaint fails to state a plausible equal protection claim. Plaintiff contends that Mountz treated her differently than Carta and Ashton, both white assistant directors. Taking the allegations as true, the court finds Carta and Ashton, who worked in the same department and reported to the same supervisor, are proper comparators for Plaintiff's equal protection claim. Nevertheless, Plaintiff fails to allege how Mountz treated her differently and acted with intentional or purposeful discrimination based on her race when he backed off from permitting ineligible students to run for office only when a white advisor said it was improper; met with an all-white female organization and gave them contrary advice; commented about her changing hairstyles; asked Plaintiff and another Black employee, "what are y'all cooking up?"; stated to Plaintiff and other people of color who met in the Greek Life conference room, "when I see y'all together in here, I get nervous"; excluded Plaintiff from reviewing a job description for a position she supervised; assumed Plaintiff's role and met several times with OSRR and others and failed to share with Plaintiff any agreements or other information gleaned from those meetings; and created a new membership form in January 2021 but failed to inform Plaintiff before the March 2021 membership event for which she was responsible.

In addition, while Plaintiff alleges Mountz did not award her a pay increase or title when Ashton received them in December 2019 (following notice that no employees would receive pay increases), she does not allege facts supporting an inference that this act was based on her race. *See McCleary-Evans*, 780 F.3d at 586 ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias.") (citing *Iqbal*, 556 U.S. at 678) (emphasis in original). For instance, Plaintiff does not allege that she was as

qualified or possessed better qualifications than Ashton, or that the two were graded the same (or Plaintiff was graded better) in work performance than Ashton, or any other reason supporting an inference that Plaintiff also deserved and should have received a pay increase.[8] *See id.* (finding race discrimination claim implausible when "[o]nly speculation can fill the gaps in [McCleary-Evans'] complaint—speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her.").

The court concludes that Plaintiff has failed to allege a plausible claim for violation of the equal protection clause based on her race and, thus, Mountz is entitled to qualified immunity.

C.    Age Discrimination – Equal Protection

Plaintiff's third claim also alleges a violation of the equal protection clause based on Plaintiff's age. Citing a 1989 Fourth Circuit case, Defendants argue that Plaintiff's claim is preempted by the ADEA. Mot. at 11-12 (citing *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989)). "*Zombro* bars not only the use of § 1983 to assert violations of the ADEA itself, but also prevents age discrimination plaintiffs from bringing § 1983 claims for violations of the Fourteenth Amendment." *Causey v. Balog*, 929 F. Supp. 900, 912 (D. Md. 1996), *aff'd*, 162 F.3d 795 (4th Cir. 1998). The Fourth Circuit distinguished the ADEA from Title VII, explaining that unlike the ADEA, "the legislative history of Title VII reveals that Congress did not intend the comprehensive statutory scheme of Title VII to operate *to the exclusion of Fourteenth Amendment claims of racial discrimination* brought by public sector employees." *See Raiford v. N. Carolina Cent. Univ. ex rel. Bd. of Governors of the*

---

[8] Plaintiff alleges she was paid for the additional duties she assumed when Ashton left the department the following month. Also, while she alleges she was just as, or better, qualified to perform Carta's position, she does not make the same or similar allegation(s) regarding Ashton. See Compl. at ¶¶ 12, 13.

Case 4:21-cv-00108-M   Document 25   Filed 03/29/22   Page 23 of 25

*Univ. of N. Carolina*, No. 12CV548, 2015 WL 3823799, at *12 n.29 (M.D.N.C. June 19, 2015) (quoting *Zombro*, 868 F.2d at 1370 n.5)) (emphasis added). The court finds that *Zombro* is binding and requires that this court conclude the Plaintiff's equal protection claim based on age is preempted by the ADEA. *Cf. Lassiter v. Cincinnati Reds, LLC*, 447 F. Supp. 3d 462, 464 (M.D.N.C. 2020) (citing *Zombro*, the court assumed a pro se plaintiff alleged an ADEA claim, because "the ADEA provides the exclusive judicial remedy for claims of age discrimination").

Plaintiff cites a 1998 opinion from the Southern District of Florida for the proposition that "an ADEA [claim] does not automatically pre-empt a simultaneously pled § 1983 claim." Resp. at 12 (citing *Hornfeld v. City of North Miami Beach*, 29 F. Supp. 2d 1357, 1364 (S.D. Fla. 1998)). However, *Hornfeld* not only is not binding on this court, but also was reversed in part and vacated in part by the Eleventh Circuit in an unreported opinion. *See Hornfeld v. City of N. Miami Beach*, 208 F.3d 1010 (11th Cir. 2000).

Even if the equal protection claim were not preempted, or if the Complaint alleged an ADEA claim, the court finds Plaintiff fails to state a plausible claim of age discrimination. Plaintiff need not plead a prima facie case at this stage, *Craddock v. Lincoln Nat. Life Ins. Co.*, 533 F. App'x 333, 336 (4th Cir. 2013), but she is "required to allege facts to satisfy the elements of a cause of action created by" the ADEA. *McCleary-Evans*, 780 F.3d at 585. Thus, Plaintiff must allege facts supporting the conclusion that age motivated the challenged actions or the actions were the result of intentional or purposeful age discrimination.

Plaintiff does not dispute that she turned 40 (and thereby became a protected individual) on July 13, 2019, more than two years after Mountz was hired as the department's director. The only alleged conduct taken by Mountz after that date related to Plaintiff's age is his comment, "you

24

and I are getting old."[9]  "When evaluating alleged age animus, [courts] must consider the context in which statements were made."  *Mereish v. Walker*, 359 F.3d 330, 337 (4th Cir. 2004). According to the Complaint, Mountz made the comment when he answered Plaintiff's request for information about a student who was a freshman.  Plaintiff alleges no adverse employment action taken by Mountz at that time other than the stray comment.[10]  Thus, Plaintiff fails to demonstrate that any challenged action taken by Mountz was motivated by her age.

## IV.    Conclusion

Taking Plaintiff's allegations as true and construing them in her favor, the court finds Plaintiff has no private cause of action under N.C. Gen. Stat. §143-422.2 and fails to state plausible claims for unlawful discrimination against the Defendants based on her race and age, as set forth herein.  Accordingly, the court GRANTS Defendants' motion to dismiss [DE 10] and directs the Clerk of Court to close this case.

SO ORDERED this $\underline{26^{Th}}$ day of March, 2022.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] Like her claim based on race, the court finds Plaintiff likewise fails to demonstrate the denial of a pay increase and title in December 2019 (assuming the claim is timely), as well as other conduct alleged by Mountz, was based on Plaintiff's age; "only speculation would fill in the gaps" for such claim.  *McCleary-Evans*, 780 F.3d at 586.

[10] "Assuming Plaintiff's role" by creating a new membership form and meeting with the OSRR and other organizations/individuals without telling Plaintiff are not, standing alone, "adverse employment actions" sufficient to alter the terms and conditions of the Plaintiff's employment. *See Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007) ("The standard for an adverse employment action in a disparate treatment case . . . mandates that the plaintiff has the higher burden of showing an 'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'") (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981)); *see also McKinney v. G4S Gov't Sols., Inc.*, 711 F. App'x 130, 138 (4th Cir. 2017) ("two counseling forms ["write-ups"] did not constitute a tangible employment action [where] they had no effect on the terms or conditions of [plaintiff's] employment").

25